# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL URQUIZA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 18-CV-025-JED-JFJ |
| STATE OF OKLAHOMA, *ex rel.* Kunzweiler, Steve, D.A. of the 14th Judicial District of Oklahoma | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Daniel Urquiza, appearing through counsel, initiated this action on January 16, 2018, by filing a "writ of mandamus" (Doc. 3). By Order filed March 5, 2018 (Doc. 4), the Court directed Plaintiff to clarify the nature of his action and identify the basis, if any, of this Court's jurisdiction. In his written response (Doc. 5), Plaintiff clarifies that this is a "civil action for declaratory relief," and invokes this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1345. Construing Plaintiff's "writ of mandamus" as a civil complaint seeking declaratory and injunctive relief, the Court finds the "writ of mandamus" should be dismissed for lack of subject matter jurisdiction, as frivolous, and for failure to state a claim upon which relief may be granted. As a result, the Court dismisses without prejudice Plaintiff's "writ of mandamus."

## *BACKGROUND*

Petitioner, a citizen of Mexico, is currently detained in the David L. Moss Criminal Justice Center (a.k.a., the Tulsa County Jail) awaiting trial on criminal charges in Tulsa County District Court, Case No. CF-2016-1988. Doc. 3 at 1, 3. Plaintiff alleges he is a removable alien because he has been charged with a criminal offense and he is subject to an immigration "hold" issued by the

United States Office of Immigration and Customs Enforcement ("ICE"). *Id.* at 3-4. He further alleges he "would prefer to be deported back to Mexico," but he has not been deported because Tulsa County District Attorney Steve Kunzweiler "has yet to pass the veritable baton from State to Federal." *Id.* at 4-5.

Before filing his "writ of mandamus," Plaintiff filed two related motions in Tulsa County District Court: (1) a "motion for immediate deportation in accordance with executive order," filed September 25, 2017, and (2) a "motion to stay proceedings awaiting answer from USDC to federal question," filed January 5, 2018. *See* Doc. 3 at 4; *see also* The Oklahoma State Courts Network ("OSCN"), *State v. Juarez, et al.*, No. CF-2016-1988, available at http://www.oscn.net (last visited May 4, 2018). Both motions are pending. *Id.*

In support of his state-court motion for immediate deportation, Plaintiff relied on language in an Executive Order issued on January 25, 2017. Doc. 3 at 4; *see* Exec. Order No. 13768, 82 Fed. Reg. 8799, 8799 (Jan. 25, 2017) (hereafter, "Executive Order"). The Executive Order "declare[s] the policy of the executive branch" as to enforcement of federal immigration law. 82 Fed. Reg. at 8799. The stated purpose of the Executive Order "is to direct executive departments and agencies (agencies) to employ all lawful means to enforce the immigration laws of the United States." *Id.*, § 1. In relevant part, the Executive Order provides that "[i]t is the policy of the executive branch to:"

> (a) Ensure the faithful execution of the immigration laws of the United States, including the INA, against all removable aliens, consistent with Article II, Section 3 of the United States Constitution and section 3331 of title 5, United States Code;
> . . .
> (c) Ensure that jurisdictions that fail to comply with applicable Federal law do not receive Federal funds, except as mandated by law; [and]
> (d) Ensure that aliens ordered removed from the United States are promptly removed.

2

*Id.*, § 2. The Executive Order also directs the Secretary of Homeland Security to "prioritize for removal those aliens described by the Congress in [certain enumerated sections of the INA], as well as removable aliens who: . . . (b) Have been charged with any criminal offense, where such charge has not been resolved." *Id.* at 8800, § 5.

In this Court, Plaintiff relied on the same Executive Order to support his "writ of mandamus." *See* Doc. 3 at 3-5. Plaintiff asserted that the Executive Order, particularly § 5(b), "requires deportable aliens to be sent back to their home countries" and alleged that he is "being unjustly detained in the U.S. against the President's Executive Order." *Id.* at 2. Plaintiff asked this Court "to issue an order so as to provide clear direction due to the ostensible appearance of an abuse of discretion by the local District Attorney who seems to remain aloof to the President's authority in and/or to an Executive Order as it pertains directly to the civil liberties of the Plaintiff." *Id.* at 1. Petitioner also asked this Court "to give rulings on the following federal questions"

> I.) Should the Executive Order be adhered to by the District Attorney? And if it should be adhered to for reasons in addition to or other than the law and points given herein, please elaborate.
> II.) In the alternative: if the Executive Order need not be adhered to by the D.A., please elaborate.
> III.) If the D.A. ought to adhere to the Executive Order yet continues to not adhere, what would be the consequences to: (a) the person or office-holder? (b) the State of Oklahoma? e.g. would such ambivalent action/inaction possibly trigger section 2(c) of the Order which states "*jurisdictions that fail to comply with applicable Federal law do not receive Federal funds, except as mandated by law*"?

*Id.* at 5 (emphasis in original).

On preliminary review of the "writ of mandamus," the Court questioned both the nature of Plaintiff's action and the basis of this Court's jurisdiction. Doc. 4 at 3-6. The Court therefore directed Plaintiff to file a written response clarifying the nature of his action and identifying the basis, if any, of this Court's jurisdiction. *Id.* at 6.

3

In his written response, Plaintiff clarifies that this is a "civil action for declaratory relief," and that he is suing District Attorney Kunzweiler in his official capacity. Doc. 5 at 1, 3. He identifies 28 U.S.C. §§ 1331 and 1345 as the bases of this Court's jurisdiction. *Id.* at 3. Plaintiff maintains that Kunzweiler's alleged failure to transfer him to federal custody for immediate deportation is "an abuse of discretion" in light of the Executive Order. *Id.* at 6. Plaintiff also appears to allege that Kunzweiler's actions violate various provisions of federal immigration law. *See id.* at 2, 4-7. Finally, Plaintiff alleges that, in some instances, Kunzweiler has released to federal custody other "illegal aliens [who] were also detained in Tulsa County jail on same or similar charges." *Id.* at 5. Plaintiff asserts that Kunzweiler's "inconsistent application of the law towards all detainees who are similarly situated as the Plaintiff is an abuse of discretion demonstrating disparate treatment" and is "a direct violation of the Supremacy Clause." *Id.* at 6. He also asserts that Kunzweiler's "disparate application of the law is making it difficult for federal immigration officers to consistently carry out their responsibilities in Tulsa County." *Id.* at 2. Plaintiff identifies his sole "claim for relief" as follows: "Defendant's abuse of discretion through inconsistent application of federal law on deportation regarding detainees transferable to federal immigration custody is in violation of the Supremacy Clause." *Id.* at 6.

Plaintiff seeks declaratory and injunctive relief. First, he requests a declaration "[t]hat the Defendant's inconsistent application of federal law on deportation regarding detainees transferable to federal immigration custody is an abuse of discretion in violation of the Supremacy Clause." *Id.* at 7. Next, he seeks an order directing Defendant to "transfer the Plaintiff to federal immigration custody for immediate deportation in accordance with the Supremacy Clause but as clarified in" §

4

5(b) of the Executive Order. *Id.*[1] Plaintiff asserts this Court has authority to provide the requested relief "under the Supremacy Clause, U.S. Const. Art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers." *Id.*

## *ANALYSIS*

Under the Prison Litigation Reform Act (PLRA), federal courts must pre-screen cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In doing so, the court must identify any cognizable claim and dismiss any claim which is frivolous, malicious, or fails to state a claim upon which relief may be granted, or which seeks monetary relief against a defendant who is immune from such relief. *Id.* § 1915A(b).[2] The court applies the same dismissal standard under the PLRA's screening provision as it uses in reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Under this standard, the court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).[3] But "when the allegations in a complaint,

---

[1] Curiously, Plaintiff also asks the Court to "award the United States its costs in this action." Doc. 5 at 7. Because the United States is not a party to this action, the Court considers only Plaintiff's requests for declaratory and injunctive relief.

[2] Plaintiff paid the $400 filing fees in full to commence this action. *See* Doc. 3. However, § 1915A's screening provisions apply to any prisoner who bring a civil suit against governmental officers or entities, regardless of whether the prisoner pays the filing fees or appears *in forma pauperis*. *Plunk v. Givens*, 234 F.3d 1128, 1129 (10th Cir. 2000).

[3] When a plaintiff appears *pro se*, the court must liberally construe the complaint. *Kay*, 500 F.3d at 1218. But this rule of liberal construction does not apply here given that Plaintiff appears through counsel. Nonetheless, the Court endeavors to construe Plaintiff's pleadings "so as to do justice." Fed. R. Civ. P. 8(e).

5

however true, could not raise a [plausible] claim of entitlement to relief," the complaint should be dismissed. *Id.* at 558. Additionally, a complaint should be dismissed as frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). For example, a claim would be legally frivolous if it asserts an "infringement of a legal interest which clearly does not exist." *Id.* at 327.

For the following reasons, Court finds that Plaintiff's "writ of mandamus" should be dismissed either for lack of subject-matter jurisdiction or for failure to state a claim upon which relief may be granted.

First, Plaintiff asserts, in part, that this Court can grant his requests for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 or the All Writs Act, 28 U.S.C. § 1651. But neither of these Acts provide this Court with subject-matter jurisdiction. *See United States v. Denedo*, 556 U.S. 904, 914 (2009) ("The authority to issue a writ under the All Writs Act is not a font of jurisdiction."); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996) ("The Declaratory Judgment Act does not confer jurisdiction upon federal courts."). Accordingly, Plaintiff must identify an independent basis of, and allege sufficient facts to support, jurisdiction. *See Cardtoons, L.C.*, 95 F.3d at 964; *see also Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1245 (10th Cir. 2001) (stating that party asserting federal jurisdiction bears burden to allege sufficient facts establishing jurisdiction).

Second, Plaintiff identifies two potential sources of jurisdiction: 28 U.S.C. §§ 1331 and 1345. Doc. 5 at 3. Section 1345 clearly does not apply. It provides: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings *commenced by the United States, or by any agency or officer thereof* expressly

authorized to sue by Act of Congress." 28 U.S.C. § 1345 (emphasis added). Because Plaintiff brings this action as a private individual, § 1345 clearly does not provide this Court with jurisdiction.

It is less clear whether Plaintiff properly invokes federal-question jurisdiction under § 1331. Section 1331 provides federal courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." The United States Supreme Court has explained that "when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378-79 (2012).[4] Significantly, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642-43 (2002) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)). In other words, if a plaintiff asserts an arguable federal claim, the federal district court should exercise federal-question jurisdiction, even if the court ultimately concludes that plaintiff fails to state a valid federal claim. *See Mims*, 565 U.S. at 377 (recognizing that "there is no serious debate that a federally created claim for relief is generally a 'sufficient condition for federal-question jurisdiction'" (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 317 (2005)); *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 896-97 (10th Cir. 2017) (concluding district court had federal-question jurisdiction over plaintiffs' "preemption claims" even though plaintiffs conceded they sought broad

---

[4] As *Mims* noted, a case may also arise under federal law for purposes of federal-question jurisdiction "when a right of action is created by state law, if the claim requires resolution of significant issues of federal law." 565 U.S. at 379 n.9. However, Plaintiff does not allege, either in his "writ of mandamus" or his response, that he relies on state law to bring this civil action.

declaratory and injunctive relief under court's inherent equitable powers rather than by seeking to vindicate their own "federal substantive rights" because (1) whether court had the power to grant such equitable relief "raise[d] a question of federal common law" and (2) plaintiffs' "attempts to privately enforce" federal law "raise[d], at minimum, 'substantial questions of federal law'" (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983))). Nevertheless, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper . . . when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. Cty. of Oneida*, 414 U.S. 661, 666 (1974)).

Here, Plaintiff identifies his federal claim as one asserting a Supremacy Clause violation. Doc. 5 at 6. Specifically, he appears to allege that various provisions of federal immigration law and § 5(b) of the Executive Order require District Attorney Kunzweiler to release him to federal custody for immediate deportation. *See id.* at 2, 4-7; Doc. 3 at 2. Thus, he claims, Kunzweiler's alleged failure to release him to federal custody violates the Supremacy Clause and entitles him to (1) a declaration to that effect and (2) a mandatory injunction ordering Kunzweiler to release him to federal authorities. Doc. 5 at 6-7.

In light of the reasoning in *Safe Streets Alliance*, Plaintiff's attempt to privately enforce federal immigration law against Oklahoma and his request for equitable relief under the Supremacy Clause, the Declaratory Judgment Act, the All Writs Act, or the Court's "inherent equitable powers," *see* Doc. 5 at 3, may be sufficient to invoke this Court's jurisdiction under § 1331. *See* 859 F.3d at 896-97. That said, Plaintiff's only identified "federal claim" appears to be so inadequate as to

8

support dismissal for lack of subject-matter jurisdiction because it is either foreclosed by Supreme Court precedent or fails to state even an arguable federal claim. *See Steel Co.*, 523 U.S. at 89.

Specifically, in *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015), the Supreme Court acknowledged that "federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law." However, the Supreme Court explained that "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity," and does not "rest[] upon an implied right of action contained in the Supremacy Clause." *Id.* The *Armstrong* Court reasoned, in part, that "the Supremacy Clause is not the 'source of any federal rights,' and certainly does not create a cause of action." *Id.* at 1383 (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989)). The *Armstrong* Court also explained that "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Id.* at 1385. Thus, if federal law either expressly or "implicitly precludes private enforcement" a plaintiff "cannot, by invoking [the federal court's] equitable powers, circumvent Congress's exclusion of private enforcement." *Id.*

For three reasons, the Court concludes that *Armstrong* supports dismissal of Plaintiff's "writ of mandamus" either for lack of subject-matter jurisdiction or, at the very least, for failure to state a claim. First, Plaintiff identifies only one claim: that District Attorney Kunzweiler's "inconsistent application of federal law on deportation regarding detainees transferable to federal immigration custody is in violation of the Supremacy Clause." Doc. 5 at 6. *Armstrong* appears to directly foreclose Plaintiff's attempt to assert a private cause of action for declaratory and injunctive relief under the Supremacy Clause. Second, to the extent Plaintiff bolsters his claim by suggesting that

9

the Supremacy Clause has been "clarified" by the Executive Order, *Armstrong* also seems to foreclose that argument. Even assuming the Executive Order has the force of law, § 5(b) merely directs *the Secretary of Homeland Security* to "prioritize" the removal of "removable aliens who . . . [h]ave been charged with any criminal offense, where such charge has not been resolved." 82 Fed. Reg. at 8800. Neither § 5(b), nor any other section of the Executive Order, requires a state district attorney to release a removable alien charged with a state crime to federal custody for immediate deportation. *See id.* at 8799-8803. Moreover, the Executive Order expressly states that it "is not intended to, and does not, create any right or benefit, substantive or procedural, *enforceable at law or in equity by any party against* the United States, its departments, agencies, or entities, its officers, employees, or agents, or *any other person*." *Id.* at 8803, § 18(c) (emphases added). Thus, to the extent Plaintiff attempts to bring this action under the Supremacy Clause, "as clarified in" the Executive Order, the plain language of the Order, as well as *Armstrong*'s reasoning, bars that attempt. Third, *Armstrong*'s statement that "federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law," 135 S. Ct. at 1384, presupposes circumstances supporting a plausible claim that the state officers conduct violates federal law. Even accepting Plaintiff's factual allegations regarding Kunzweiler's conduct as true, his claim that Kunzweiler's failure to release him to federal authorities violates federal law has no arguable basis in the law. As stated, Plaintiff primarily relies on § 5(b) of the Executive Order to support his claim. But that section does not require Kunzweiler to release Plaintiff to federal authorities. Likewise, Plaintiff fails to identify any specific provision of federal immigration law requiring a state official to release an alien subject to an ICE "hold" to federal authorities when

that alien is awaiting trial in state court on criminal charges. *See* Doc. 5 at 4. Thus, Plaintiff fails to state an arguable, much less a plausible, federal claim.

Based on the foregoing, the Court finds Plaintiff's purported federal claim is so inadequate that Plaintiff's "writ of mandamus" should be dismissed for lack of subject-matter jurisdiction, *see Steel Co.*, 523 U.S. at 89, dismissed as frivolous, *see Neitzke*, 490 U.S. at 325, and dismissed for failure to state a claim upon which relief may be granted, *see Bell Atl. Corp.*, 550 U.S. at 558. Consequently, the Court dismisses without prejudice Plaintiff's "writ of mandamus."

**ACCORDINGLY, IT IS HEREBY ORDERED** that Plaintiff's "writ of mandamus" (Doc. 3) is dismissed without prejudice.

ORDERED this 8th day of May, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE